Mr. Chief Justice Sharkey
delivered the opinion of the court.
This case comes, by appeal, from the chancery court. It involves a very important question if the merits could be reached, but in its present attitude the merits are not presented, and cannot be reached without violating inflexible rules of law. This will be apparent from a presentation of the orders from which the appeal was prayed.
The complainant, Miller, filed the bill, in which he claims to be the exclusive proprietor of a ferry across the Mississippi river. He derives his claim from an act of the legislature of this state, passed in 1842, by which the right was granted to him, on certain conditions, with a prohibition as to other ferries within three miles, under certain penalties. He charged the respondents with a violation of his right by establishing a ferry within one mile or less, and prayed an injunction. The injunction was granted, and served on the parties on the 18th of January, 1848.
On the 21st of the same month, the complainant filed a petition in court, charging the defendants with having violated the injunction by a continuance of their ferry after service.
On the next day, the 22d, an attachment issued, requiring the sheriff to take the parties and bring them into court, to answer the charge of contempt against the process.
On the 28th, the sheriff returned that the defendants were not found, and he had reason to believe they'remained out of the state for the purpose of avoiding service.
On the 29th, the complainant filed another petition, stating that Lee lived in this state, and had nof been served with the injunction; that Barnes and Lewis resided in the state of Louisiana, and having been informed of the attachment, remained out of the way to evade service, and continued to disregard the injunction, by running their ferry-boat, by their agent, James Williams. This petition prayed that process might issue, directing the sheriff to seize the boat and hold the same until Barnes and Lewis appeared, and for an attachment against the agent Williams. The chancellor, by his fiat on the petition, granted the process, as prayed for.
*114 Afterwards, the defendants, by their counsel, moved the court to discharge the attachment granted and issued in this case, and to discharge the distringas issued herein against the property of defendants to compel their appearance, and to dissolve the injunction, and, upon the trial of this motion, offered evidence.
The evidence offered consisted of a bill filed by the said defendants against Miller to enjoin him from prosecuting suits at law for the penalties under the statute of this state, and his answer. The bill sets up a right in the defendants, derived from certain ordinances of the police jury of the parish of Madison in Louisiana; also from an act of the legislature of that state, granting them the right to keep a ferry opposite Vicksburg. And they also set up a license to their boat to carry on the coasting trade under the act of congress, with a view to show that the act of the legislature was void, as interfering with the power of congress to regulate commerce.
On the loth of March, 1848, thi's motion was overruled, but the sheriff was directed to surrender the ferry-boat, on defendants entering into a recognizance in $5000 to answer the contempt on the first Monday in June. From this order the appeal was prayed, and the question is, What does it bring up for our determination ?
There was neither ah answer or a demurrer to the bill, and there was therefore nothing which could justify an inquiry into the merits of the case, on the motion to dissolve the injunction. There is no such thing as an appeal from a mere refusal to dissolve an injunction. An appeal may be taken from an interlocutory decree, provided money is thereby decreed to be paid, or the title of property is to be changed. H. & H. Dig. 513. But in this case there was no interlocutory order, so far as the injunction was concerned. By the act of 1844, an appeal may be taken from the decision of the chancellor in overruling a demurrer, but there was no demurrer in this ease. As to the injunction, there was no order whatever; the chancellor refused to make any. With the decision of the chancellor, then, in refusing to dissolve the injunction, we can have nothing to do. That must remain as the judgment of that court.
*115 The next inquiry is, What question is raised by the other branch of the motion, to wit, to discharge the attachment against the persons of the defendants, and the process against their property %
The attachment was intended to bring in the parties, to answer for the contempt committed by a breach of the injunction.
In the first place, we shall consider an objection taken to the regularity of the proceeding. It is said, that an attachment should not have issued in the first. instance, but that a motion should have been made that the parties stand committed, of which due notice should have been given, either to the parties or their solicitor; or that a motion for an order nisi should have been made, which order should also have been served. Such is now the course generally pursued according to the English practice. 1 Smith, Ch. Pr. 623. This is a mere question of practice, however, which may be varied according to particular circumstances. The order nisi may be obtained ex parte, and if a party has absconded, personal service may be dispensed with, and service on his solicitor, or at his last place of abode, or some constructive service, adopted. 3 Daniels, Ch. Pr. 1909. This, however, seems to be a modern practice. Formerly the practice was, that, upon affidavit of service of the injunction, an attachment issued in the first instance, and if the party was arrested under the attachment, interrogations were filed, which he was compelled to answer. (Id. note h.) And this seems to be still the practice in New York. McCredie v. Senior, 4 Paige, 378. See also 1 Burr. 20. As this is a mere matter of practice, it is perhaps immaterial which mode is pursued. We must suppose the court conformed to its own rule of practice; and it is no ground for our interference, because the court chose to follow the old practice instead of the more modern. The attachment was only process to bring in the parties to answer the contempt. It was but little, if any thing, more than an order nisi. There was, therefore, no ground for discharging the attachment because it had irregularly issued.
We come, in the next place, to inquire whether the showing *116 of the defendants was sufficient to entitle them to have the attachment discharged. But before we proceed, it seems to be proper that we should bestow some notice on a preliminary question, to wit, Does an appeal or writ of error lie in a matter of contempt? This point has not been seriously controverted in the argument, and we do not mean to decide it definitely either way. We notice it, lest this opinion should hereafter be regarded as a precedent in favor of such right. On this point, it will be sufficient for us in a few remarks to notice the celebrated case of J. Y. N. Yates, reported first in 4 Johns. Rep. 315, and again in 6 Johns. 337, which last is the decision of the court for the correction of errors. The investigation brought to light every precedent, and gave rise to a display of judicial learning, which has been but rarely equalled. Chancellor Lansing had .committed Yates for a contempt of his court. Yates applied to Judge Spencer for a writ of habeas corpus, and was on the hearing thereof discharged by the judge. The chancellor, regarding the order of discharge as void, again committed Yates, and Judge Spencer, on a second habeas corpus, again discharged him. The chancellor recommitted him, and thereupon Yates applied to the supreme court, then in session, for a writ of habeas corpus. The process was granted, but that court remanded him. They considered that the discharge by Judge Spencer was inoperative and void, because a single judge in vacation could not discharge one who was in custody for a contempt. It was also decided, that the supreme court had no power to discharge one who was in custody for a contempt of another court. It was said that a conviction for a contempt, and a commitment by a court of competent authority, was conclusive.
Yates applied for a writ of error from the court, for the correction of errors, (the senate and judges,) and here the question was raised whether a writ of error would lie. The majority of the law judges were against it, Chief Justice Kent at their head, who delivered an opinion so well fortified by authority, and so powerful in reasoning, that it would seem to be unanswerable. By a small majority, however, the senate *117 decided, that the writ of error would lie to reverse the judgment of the supreme court on the habeas corpus, and on the merits the judgment of the supreme court was reversed. It may still be doubted whether this case should be looked upon as having settled the question, when we look at the weight of legal ability which was arrayed against the decision. The supreme court of Tennessee has also decided, that an appeal will not lie from an order of commitment for a contempt. Ex parte, A. L. Martin. But we are willing, on this occasion, to regard it as a doubtful question, and to give the defendants the benefit of their appeal.
The defendants claimed to have the attachment discharged, on the ground, that they had a right to keep a ferry across the Mississippi river at Yicksburg. Suppose this were true, and suppose, also, that the right set up by Miller was unfounded in fact, does this afford them a justification for a violation of the injunction? Surely this question can admit of but one answer. However wrongful it may have been to grant the injunction, or however superior may be the defendant’s right, he must still obey the process, until he can get rid of it by order of the court made either on motion to dissolve on the face of the bill, on demurrer, or on answer or plea. He cannot elect to disregard the injunction because it was improvidently issued, or because of his superior right. 3 Daniel, Ch. Pr. 1908; Moat v. Holbein, 2 Edwards, 188. The superior right of the defendants, or the erroneous grant of an injunction, might present persuasive reasons with the chancellor for mitigating the punishment for a violation, but they cannot afford a justification of the breach. If this were so, then an injunction would be effectual or not, according to the merits of the case, whereas it is but a command to abstain from doing certain things until the merits can be heard. These defendants admit that they were guilty of a breach of the injunction, and set up their excuse. The chancellor did not think it sufficient to induce him to dispense with the attachment. With him it might have been a matter of discretion, to punish or not, but we cannot say that he was bound to discharge them. We would willingly have decided the merits of this case, but do not feel at liberty to do so in its *118 present attitude: indeed, we could not without a violation of the law of this court. The parties who bring up the case, did not place it on its merits in the court below; the appeal is therefore dismissed.